# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Lester Singleton, Jr.,

      Petitioner,

v.

Steve Rivard,

      Defendant.

Case No. 12-11122
Hon. Judith E. Levy
Mag. Michael J. Hluchaniuk

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

This matter is before the Court on a *pro se* habeas corpus petition brought pursuant to 28 U.S.C. § 2254. Petitioner Lester Singleton, Jr., is a state prisoner at Kinross Correctional Facility in Kincheloe, Michigan. He is challenging his state convictions for criminal sexual conduct in the first and second degree. Having reviewed the pleadings and the record, the Court concludes that petitioner's claims do not warrant habeas corpus relief.

## I. Background

A.  The Trial Testimony, Verdict, and Sentence

Petitioner was charged in Wayne County, Michigan with two counts of first-degree criminal sexual conduct under M.C.L. § 750.520b(1)(a) (victim under thirteen years of age) and one count of second-degree criminal sexual conduct under M.C.L. § 750.520c (multiple variables).  The first-degree charges arose from allegations that petitioner used his finger and penis to penetrate his live-in girlfriend's twelve-year-old daughter ("the complainant").  The second-degree charge arose from the complainant's allegation that petitioner touched her genital area.  The complainant testified at petitioner's trial in Wayne County Circuit Court that a few days before her thirteenth birthday in March of 2007, she woke up to find:

> [petitioner] lying on top of her. . . .  [Her] pajama pants had been pulled down to her knees, and [her] underpants were twisted to one side.  [Petitioner] was touching [her] "hole" with his finger.  Complainant explained that her "hole" was where she "peed" and "wiped."  A short time thereafter, [petitioner], clothed only in boxer shorts, exposed his penis and attempted to insert his penis in complainant's "hole," but was unsuccessful in his attempt to insert it completely into complainant.  [Petitioner] moved "back and forth" while touching her with his penis, and when [petitioner] eventually released complainant, her vagina felt "sticky" and "nasty."

*People v. Singleton*, No. 282082, 2009 WL 691877, at *3 (Mich. Ct. App. Mar. 17, 2009).

The complainant also testified that, after the above incident, she took a bath, and petitioner told her to keep her mouth shut. (Dkt. 12-8 at 37, 65). She nevertheless informed her mother about what happened the next day. Her mother did not believe her because she (the complainant) had been around petitioner since she was a baby. (*Id.* at 39).

The complainant claimed that she also disclosed the incident to her school teacher and principal. She informed the teacher and the principal that her mother's boyfriend had touched her. (Dkt. 12-8 at 42-45). Her grandmother subsequently took her to the police station where she told her story to two police officers. (*Id.* at 47-48). She subsequently went to a doctor and told the doctor what had happened. (*Id.* at 49).

Dr. Leena Dev testified that she examined the complainant at a university sexual abuse clinic. According to Dr. Dev, the complainant said that her mother's boyfriend had gotten on top of her one weekend

and tried to put his finger in her "hole."  He also tried to stick his "thing" in her.  The complainant told Dr. Dev that she had tried to push the man off her and when he did get off her, he told her to keep her mouth shut.  She then took a bath because her vagina felt nasty and slimy.  (*Id.* at 61, 64-65).

Dr. Dev also testified that she noticed nothing unusual during her examination of the complainant.  She did not see any injury, redness, scars, rashes, or lesions.  She explained that she did not examine the complainant's internal genitalia because the complainant was tense during the examination.  Dr. Dev did not use a rape kit because it had been over seventy-two hours since the complainant's last contact with petitioner.  (*Id.* at 67-69).

Police Officer Eric Jones testified that on April 20 or 21, 2007, he took a molestation report from a young girl who was upset, nervous, and scared.  (*Id.* at 98-100).  The officer in charge of the case, Detective Kenneth May, testified about the unsuccessful efforts he undertook to locate the complainant's mother for trial.  (Dkt. 12-9 at 70-71).

4

The complainant's former school teacher, Cindy Tumas, testified that the complainant approached her after Tumas instructed her students to tell someone if they ever had a problem.  Ms. Tunas testified that the complainant stated that she had been raped by her mother's boyfriend, whom she called "Snoop."  According to Ms. Tumas, the complainant was visibly upset, hyperventilating, and crying when she revealed this.  (*Id.* at 19-23).

Michelle Hernandez was the complainant's former school principal.  She testified that the complainant came to her office one day with Ms. Tumas and told her about something that had happened.  The complainant said that "Snoop" did it.  (*Id.* at 33).

Sheila Vaclav testified that she was the community manager of a trailer park in Taylor, Michigan called Wellington Estates Manufactured Housing Community.  She stated that the complainant's mother lived at Wellington Estates for about a year and was then evicted.  At some point prior to the eviction, the water to the mother's trailer was shut off at a hand valve outside the home.  (*Id.* at 39-40).

5

Matthew Watson testified that he was a maintenance worker at Wellington Estates and that there was a water leak at the trailer where the complainant's mother lived.  He and a resident shut off the water valve, but, according to Mr. Watson, there was nothing to stop anyone from turning the water back on.  (*Id.* at 53-56).

The parties stipulated that, if the complainant's grandmother testified, she would say that the complainant's school called her one day, that she subsequently picked up the complainant, and that she took the complainant to the police station on the same day.  The parties also stipulated that if the two police officers who arrested petitioner would testify, they would say that they took petitioner into custody without incident.

Petitioner was the only defense witness.  He denied sexually assaulting the complainant.  He stated that he did not get in bed with the complainant, he did not pull down or pull aside her clothing, and he did not penetrate, or attempt to penetrate, the complainant with either his fingers or his penis.  Petitioner went on to say that the water to the trailer where he and the complainant's family lived was cut off in mid-

6

February, that there was no water leak, and that he did not turn the water back on.  According to him, it would have been impossible for anyone to take a hot bath in the trailer on March 1, 2007.  (*Id.* at 90-110).

On October 23, 2007, the jury acquitted petitioner of one count of first-degree criminal sexual conduct (penile/vaginal penetration), but found him guilty of one count of first-degree criminal sexual conduct (digital/vaginal penetration) and another count of second-degree criminal sexual conduct.  On November 6, 2007, the trial court sentenced petitioner to imprisonment for twenty-five to sixty years for first-degree criminal sexual conduct and to a concurrent term of six to fifteen years in prison for second-degree criminal sexual conduct.  *See Singleton*,  2009 WL 691877 at *1.

### B.  The Direct Appeal and State Collateral Proceedings

In an appeal of right, petitioner argued that:  (1) he was denied a fair trial by the admission of the complainant's out-of-court statements to third parties; (2) there was insufficient evidence to support his conviction for first-degree criminal sexual conduct; (3) the trial court

deprived him of his constitutional right to represent himself; (4) the trial court erred by refusing to grant a continuance; and (5) the trial court abused its discretion by refusing to depart below the mandatory minimum sentence. The Michigan Court of Appeals rejected each of these claims and affirmed petitioner's convictions in an unpublished, *per curiam* decision. *See id.* at *1. On September 11, 2009, the Michigan Supreme Court denied leave to appeal. *See People v. Singleton*, 485 Mich. 865 (2009).

In 2010, petitioner filed a motion for relief from judgment in which he argued that: (1) the trial court abused its discretion by refusing to address his motion for fraud on the court; (2) trial counsel submitted a fraudulent contract to the trial court; (3) trial counsel was unprepared for trial; (4) trial counsel failed to call an independent expert; (5) the prosecutor and trial counsel erred by not producing a *res gestae* witness; and (6) his convictions should be reversed on the basis of actual innocence. (Dkt. 12-16 at 9). The trial court denied petitioner's motion under Michigan Court Rule 6.508(D)(3) because petitioner did not raise his claims on direct appeal and because he failed to establish "good

8

case" for his failure to do so and "actual prejudice."   The Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Rule 6.508(D), *see People v. Singleton*, No. 300638 (Mich. Ct. App. Aug. 30, 2011), and on December 28, 2011, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Singleton*, 490 Mich. 974; 806 N.W.2d 501 (Mich. 2011) (table).

### C.  The Habeas Petition and Answer

On March 13, 2012, petitioner filed this habeas corpus petition. The Court understands petitioner's grounds for relief to allege that:  (1) the trial court deprived him of a fair trial by improperly admitting hearsay statements; (2) there was insufficient evidence of penetration to support his conviction for first-degree criminal sexual conduct; (3) the trial court violated his constitutional right to represent himself; (4) the trial court erred by refusing to grant a continuance; (5) the trial court abused its discretion by refusing to depart from the mandatory minimum sentence; (6) the trial court abused its discretion by refusing to address his motion for fraud on the court; (7) defense counsel

9

submitted a fraudulent contract to the court; (8) defense counsel failed to investigate mitigating evidence through the use of a paid investigator; (9) defense counsel failed to use an independent medical expert and failed to prepare himself for an effective cross examination; (10) the prosecutor and defense attorney committed prejudicial error by not producing the complainant's mother as a witness; (11) he is innocent of the crimes for which he was convicted; (12) defense counsel failed to investigate the case in a timely manner through a paid investigator; and (13) his trial and appellate attorneys were ineffective for failing to challenge the trial court's calculation of the sentencing guidelines and for not seeking a lower minimum sentence. (Dkt. 1).

Respondent Steve Rivard argues in an answer to the petition filed through counsel that petitioner did not exhaust state remedies for his thirteenth claim and that his other claims are procedurally defaulted, not cognizable on habeas review, or meritless.

"[I]n the habeas context, a procedural default, that is, a critical failure to comply with state procedural law, is not a jurisdictional matter." *Trest v. Cain*, 522 U.S. 87, 89 (1997). The rule requiring

exhaustion of state remedies also is not a jurisdictional requirement. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). A federal court may deny an application for the writ of habeas corpus on the merits despite the failure to exhaust available state remedies. 28 U.S.C. § 2254(b)(2).

Petitioner's claims lack merit, and a determination of whether his claims are procedurally defaulted "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).

II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light

> of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."

*Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

## III.   Analysis

### A.   Hearsay (claim one)

Petitioner alleges that the trial court deprived him of a fair trial by admitting in evidence the complainant's statements to her teacher, her principal, and doctor that her mother's boyfriend sexually assaulted her. (Dkt. 1 at 4-5). The Michigan Court of Appeals reviewed this claim for "plain error" because petitioner did not preserve the claim for appeal by objecting at trial. *Singleton*, 2009 WL 691877 at *2. The Michigan Court of Appeals then analyzed petitioner's claim and determined that

the complainant's statements to her doctor were properly admitted, but her statements to her teacher and principal were inadmissible. *Id.* The Court of Appeals nevertheless concluded that, even if it ruled that the statements to the doctor were inadmissible, petitioner's claim failed because admission of the evidence did not result in outcome-determinative prejudice. *Id.* at *3.

This Court finds no merit in petitioner's claim because it alleges a violation of state evidentiary rules. "[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) ( *per curiam*)). Consequently, to the extent some hearsay violated Michigan's rules of evidence, the error is not cognizable on federal habeas review. *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009) (affirming the district court's ruling that decisions under state evidentiary principles were not cognizable on habeas review).

14

The Court therefore declines to grant relief on petitioner's first claim.

### B. Sufficiency of the Evidence (claim two)

Petitioner alleges there was insufficient evidence to support his conviction for first-degree criminal sexual conduct. He claims there was no evidence he penetrated the victim. In support of this claim, petitioner relies on Dr. Dev's testimony that she did not notice any injury, redness, scars, or rash on the victim's genital area. Petitioner also points out that there was no forensic evidence demonstrating that he penetrated the complainant's body, and he contends that the complainant herself testified at trial that she was touched, not penetrated. (Dkt. 1 at 6).

Petitioner was acquitted of the charge of penetrating the complainant with his penis. Therefore, the only question is whether there was sufficient evidence that he penetrated the complainant with his finger. The Michigan Court of Appeals concluded that there was sufficient evidence through the complainant herself so that a rational

trier of fact could conclude that the defendant penetrated the complainant's vagina. *Singleton*, 2009 WL 691877 at \*3.

### 1. Clearly Established Federal Law

"A defendant challenging the sufficiency of the evidence 'bears a very heavy burden.'" *United States v. Prince*, 214 F.3d 740, 746 (6th Cir. 2000) (quoting *United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted) (emphases in original).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)).

First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at 319) (emphasis in original).   Second, even if the Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphases added).

### 2. Application

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16.   The elements of first-degree criminal sexual conduct, as charged in this case, "are that (1) the defendant engaged in sexual penetration with another person and (2) the other person was under 13 years of age." *People v. Lockett*, 295 Mich. App. 165, 187 (2012) (citing *People v. Hammons*, 210 Mich. App. 554, 556-57; 534 N.W.2d 183 (1995)); *see also* M.C.L. § 750.520b(1)(a).

Petitioner does not dispute the complainant's age at the time of the alleged incident. He claims there was no evidence of penetration.

"Sexual penetration" is defined in the statute as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . ." M.C.L. § 750.520a(r). "According to the law, 'penetration' is *any* intrusion, however slight, into the vagina *or* the labia majora." *Lockett*, 295 Mich. App. at 188 (emphases in original); *accord People v. Legg*, 197 Mich. App. 131, 133 (1992) (stating that "[t]he labia are included in the 'genital openings' of the female"); *People v. Bristol*, 115 Mich. App. 236, 238 (1982) (explaining that the female genital opening includes the labia).

The complainant testified that petitioner touched her with his finger. She knew that he was touching her vagina because she could feel it and it did not feel good. (Dkt. 12-8 at 30-31). She went on to say that petitioner touched her by her "hole." Although she did not know if petitioner's finger went in her "hole," she claimed that she used her

18

"hole" to "pee" and that petitioner touched her near the area where she wiped herself.  (*Id*. at 31-32).

Dr. Dev testified that urine comes out of the urethra and that the urethra is found inside the labia majora.  (*Id*. at 67).  Dr. Dev also testified that the complainant had said petitioner tried to put his finger in her hole.  (*Id*. at 65).

The jury could have inferred from the complainant's and Dr. Dev's testimony that petitioner penetrated the complainant's labia majora. Thus, a rational trier of fact could have concluded from the evidence viewed in the light most favorable to the prosecution that the prosecutor proved the element of penetration beyond a reasonable doubt.

The Court, furthermore, must defer to the state appellate court's ruling on petitioner's claim so long as it was not unreasonable.  *Brown*, 567 F.3d at 205. The Court notes that in *Lockett* the Michigan Court of Appeals found sufficient evidence of penetration where the complainant testified that the defendant's "private" touched the area where she wiped herself after urination.  *Lockett*, 295 Mich. App. at 188.  In *Legg*,

the Michigan Court of Appeals similarly concluded that sufficient evidence supported a verdict of first-degree criminal sexual conduct where the complainant testified that the defendant touched the part of her body where she goes to the bathroom. *Legg*, 197 Mich. App. at 133.

The complainant in this case made similar allegations about where she was touched, and, in Michigan, a complainant's testimony in a criminal sexual conduct case need not be corroborated. *See* M.C.L. § 750.520h ("[t]he testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g"); *see also People v. Brantley*, 296 Mich. App. 546, 551 (2012) ("'[t]he complainant's testimony can, by itself, be sufficient to support a conviction' of criminal sexual conduct.") (quoting *People v. Szalma,* 487 Mich. 708, 724 (2010)).

The state court's conclusion that the prosecution presented legally sufficient evidence is reasonable and entitled to deference.   Petitioner has no right to relief on the basis of his second claim.

### C.  Right to Represent Oneself (claim three)

Petitioner alleges that the trial court violated his constitutional rights by denying his request to represent himself.   He claims that he

20

made an oral and a written request to represent himself forty days prior to the start of the trial and that trial counsel continued to represent him even though there was a breakdown in communication. (Dkt. 1 at 8). The Michigan Court of Appeals thoroughly reviewed this claim on direct appeal and found no merit in it, stating that,

> although defendant's initial assertion of his right to represent himself was arguably unequivocal, after [being advised] of the dangers and disadvantages of self-representation, defendant unequivocally asserted his request to proceed with the representation by defense counsel.
>
> . . .
>
> [B]ecause defendant unequivocally expressed his desire to proceed with counsel's representation, defendant's argument, that the trial court denied him his right to represent himself, fails.

*Singleton*, 2009 WL 691877, at *5-6.

### 1. Clearly Established Federal Law

Defendants in state criminal cases have "a constitutional right to proceed without counsel when [they] voluntarily and intelligently elect[] to do so." *Faretta v. California*, 422 U.S. 806, 807 (1975). But the defendant should "clearly and unequivocally declare[] to the trial judge that he want[s] to represent himself and [does] not want counsel." *Id.*

21

at 835.    Indeed, courts should ensure that defendants "[are] made aware of the dangers and disadvantages of self-representation, so that the record will establish that '[they] know[] what [they are] doing and [their] choice is made with eyes open.'"  *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942).

### 2.  Application

Petitioner filed a pretrial motion to represent himself, but the trial court did not receive the motion before trial.  On the first day of trial, his attorney orally informed the trial court that petitioner wished to represent himself.  (Dkt. 12-7 at 6).  The trial court subsequently questioned petitioner about whether he wanted to represent himself. Petitioner initially said that he did, but that he was not prepared for trial and that evidence which he needed to prove his innocence was being withheld.  (*Id.* at 7).

The trial court said that it would allow petitioner to represent himself, but that the court planned to proceed with trial and that defense counsel would remain in the courtroom.  The court then warned petitioner that he was facing serious charges and that, if he were

convicted, he would face a significant amount of time in prison.  The court advised petitioner against representing himself, but stated that petitioner had a right to represent himself and that the court was not withholding the right from him.  The colloquy continued with the court asking petitioner whether he wanted to represent himself or whether his objective was to ensure that his side of the story was heard.  Petitioner responded that he wanted to tell his side of the story.  The court then once again asked petitioner what he wanted to do and whether he wanted to represent himself or whether he wanted to continue being represented by his current defense attorney.  Petitioner answered that he wanted to be represented by defense counsel, but that he also had something to say.  The colloquy ended with the court saying, "[T]hat's certainly your right," and, "We'll go ahead and bring in this jury panel and . . . pick the jury . . . ."  Petitioner replied, "Thank you, so much, your Honor."  (*Id*. at 6-14).  Jury selection followed.

On the second day of trial, the trial court indicated that it had received petitioner's written motion to represent himself.  The trial court provided a copy of the motion to defense counsel, who had not

seen it.  The trial court said that the motion was unacceptable and that petitioner and his attorney would have to work things out.  The court then noted that the motion was dated October 17 (the day before trial), but was received on the nineteenth (the day after trial commenced).  The discussion concluded, and the trial resumed, with the court saying that the motion was not an issue.  (Dkt. 12-9 at 4-5).

The record, as summarized above, indicates that petitioner did not "clearly and unequivocally" declare his desire to represent himself.  Although he initially stated that he wanted to represent himself, he subsequently indicated that he wanted defense counsel to represent him and that his desire was to tell his side of the story.  His written motion, moreover, was moot because the trial court received the motion after the issue was resolved.  There is no indication in the record that petitioner intended the motion to be a renewed request to represent himself.  As the Michigan Court of Appeals pointed out, the motion does not appear on the trial court's docket, and petitioner did not file the motion after the trial court provided defense counsel with his copy of the motion.  *See Singleton*, 2009 WL 691877 at *5.

24

The Michigan Court of Appeals concluded that petitioner unequivocally expressed his desire to proceed with counsel's representation and, therefore, his argument that the trial court denied him his right to represent himself failed. *Id.* This conclusion was objectively reasonable and neither contrary to, nor an unreasonable application of, *Faretta.* Accordingly, petitioner has no right to relief on the basis of his third claim.

### D. Denial of Continuance (claim four)

Petitioner alleges that the trial court erred when it refused to grant a continuance so that he could obtain substitute counsel or prepare to represent himself. The Michigan Court of Appeals disagreed and held that the trial court did not abuse its discretion in declining to grant a continuance. *Id.* at *6. It also found that, even if the trial court abused its discretion, the petitioner was unable to show "that the error asserted has resulted in a miscarriage of justice. *Id.* (quoting *People v. Lukity*, 460 Mich. 484, 495 (1999).

### 1. Clearly Established Federal Law

A habeas claim rooted in an alleged denial of a continuance "is governed by standards that are well established and difficult to meet." *Esparza v. Sheldon*, 765 F.3d 615, 624 (6th Cir. 2014). As explained in *Franklin v. Bradshaw*, 695 F.3d 439 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1724 (2013),

> Trial courts are granted broad discretion on matters of continuances. *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). "The denial of a defendant's motion for a continuance amounts to a constitutional violation only if there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *United States v. King*, 127 F.3d 483, 486–87 (6th Cir. 1997) (internal quotation marks omitted); *see also Morris*, 461 U.S. at 11–12, 103 S.Ct. 1610. As the Supreme Court put it:
>
>> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at the time the request is denied*.

> *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11
> L.Ed.2d 921 (1964) (emphasis added) (citations omitted). It
> is not enough for the defendant to demonstrate error,
> however. He must demonstrate *reversible* error: that the
> continuance's denial "resulted in actual prejudice to his
> defense." *King*, 127 F.3d at 487 (internal quotation marks
> omitted). "The defendant demonstrates 'actual prejudice' by
> showing that a continuance would have made relevant
> witnesses available or added something to the defense."
> *Ibid.*

*Id.* at 452-53.

### 2. Application

Petitioner's claim regarding the denial of a continuance is related
to his claim that he was denied the right to represent himself and that
he was dissatisfied with his attorney. As previously explained,
however, petitioner did not clearly and unequivocally express a desire to
represent himself. He chose to proceed with the attorney who was
representing him, and he has not shown that his attorney was
unprepared or that there existed "a conflict of interest, a complete
breakdown in communication, or an irreconcilable conflict" between him
and his attorney, such that substitution of counsel was necessary.
*Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). Therefore, the
trial court did not abuse its discretion when it refused to adjourn the

27

trial.    There was no justifiable reason for a continuance and no unreasoning or arbitrary insistence upon expeditiousness.

Petitioner claims that he was unprepared for trial due to a lack of evidence and a missing *res gestae* witness (the complainant's mother). However, the prosecution was unable to locate the complainant's mother.  Furthermore, petitioner was able to present his version of the facts by testifying in his own defense.    Thus, petitioner has not demonstrated any prejudice as a result of the denial of a continuance.

The decision of the Michigan Court of Appeals – that the trial court did not abuse its discretion in declining to grant a continuance – was neither contrary to nor an unreasonable application of *Morris* or *Ungar*.  Petitioner therefore has no right to habeas relief on the basis of his fourth claim.

### E.  The Sentence (claim five)

Petitioner argues that the trial court abused its discretion by refusing to depart below the mandatory minimum sentence of twenty-five years for first-degree criminal sexual conduct.  Petitioner claims there was no evidence to support the charge of first-degree criminal

28

sexual conduct and that his only prior conviction was a misdemeanor conviction for unpaid child support.   He also points out that the sentencing guidelines called for a sentence of 81 to 135 months.   These factors, according to petitioner, were objective, verifiable, substantial, and compelling reasons to depart downward from the mandatory minimum sentence. (Dkt. 1 at 11).

The Michigan Court of Appeals reviewed petitioner's claim for "plain error" because petitioner did not preserve the issue for appeal. The Court of Appeals also found no merit in the claim.  *Singleton*, 2009 WL 691877 at *7.

This Court likewise finds no merit in petitioner's claim.   Under state law, first-degree criminal sexual conduct committed by someone seventeen years of age or older against someone less than thirteen years of age is punishable "by imprisonment for life or any term of years, *but not less than 25 years.*"   M.C.L. § 750.520b(2)(b) (emphasis added); *see also People v. Douglas*, 496 Mich. 557, 564 (2014) (holding that Section 750.520b(2)(b) "requires a 25-year mandatory minimum sentence…")

The complainant in this case was under thirteen years of age at the time of the crime, and no one disputed that petitioner was more than seventeen years old. The trial court therefore was required to sentence petitioner to at least twenty-five years in prison for his first-degree criminal sexual conduct conviction. Petitioner is not entitled to habeas relief on the basis of his fifth claim.

### F. Fraud on the Court (claim six)

Petitioner alleges that the trial court abused its discretion by refusing to address (1) his motion to disqualify defense counsel for a fraud on the court and (2) the complaint that he filed with the Michigan Attorney Grievance Commission. Petitioner claims he presented the motion and a copy of the complaint to the trial court forty days before trial, but the trial court never considered either the motion or his grievance. As a result, he claims that he was forced to go to trial with an attorney he had complained about to the Attorney Grievance Commission. Petitioner also alleges that the trial court abused its discretion by failing to decide his post-judgment motion to set aside the judgment for fraud on the court. (Dkt. 1 at 13).

## 1. The Pretrial Motion and Complaint

At a pretrial motion hearing on September 14, 2007, petitioner claimed that someone had forged his signature on a court document. Defense counsel then explained to the court that petitioner was upset because he did not sign a notice regarding the trial date and because somebody else appeared to have placed his signature on the form. (Dkt. 12-4 at 7-8).

Petitioner confirmed that it was not his signature on the form, and then stated that he "ha[d] an Attorney Grievance" and also a motion to disqualify his attorney for fraud on the court. The trial court asked petitioner whether he was suggesting that defense counsel had forged his signature. Petitioner responded that defense counsel had submitted his court papers and that someone else subsequently handed him a piece of paper which purported to have his signature on it. (*Id.* at 8).

The colloquy continued with the trial court explaining to petitioner that, although forgery is unacceptable, the notice simply advised petitioner of his trial date. The court ended the discussion by stating that defense counsel was appointed by the court, that petitioner

had no right to counsel of choice, and that petitioner should try to work with his attorney and have faith in the attorney.   (*Id.* at 8-12).

Although the trial court did not ask petitioner specifically about his motion to disqualify his attorney or his complaint with the Attorney Grievance Commission, the discussion between petitioner and the trial court suggested that the basis for the motion and complaint was the "forged" signature on the notice of trial.   To the extent that was the basis for petitioner's dissatisfaction with his attorney, the trial court did address his motion and complaint.   Furthermore,

> it would be an unusual intrusion for federal courts to second-guess state procedures for resolving motions once they have been presented.   States are independent sovereigns, and the federal government generally speaking should respect their choices about how to adjudicate disputes.

*Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013).   Therefore, federal courts must not "assume that there . . . exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States."   *Stone v. Powell*, 428 U.S. 465, 493 n. 35 (1976).   Instead, federal courts must "presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to

achieve a just resolution of the claim – resolving some motions with neither an evidentiary hearing nor an oral argument, some with an oral argument alone, some with both." *Good*, 729 F.3d at 639.

Even if the trial court failed to adequately address petitioner's pretrial motion about his attorney, petitioner stated on the first day of trial that he wanted to continue being represented by the attorney. Therefore, the alleged failure to address petitioner's motion did not prejudice him.

### 2.  The Post-Judgment Motion

Petitioner claims that the trial court also failed to address his post-judgment motion to set aside the judgment for fraud on the court. The record indicates that the trial court returned the motion because petitioner was represented by appellate counsel at the time.

Whether or not the trial court did the right thing, the contention that some error occurred during state post-conviction proceedings is not a cognizable claim on federal habeas corpus review. *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002) ("such claims relate to a state civil matter, not the custody of a defendant.")

Accordingly, petitioner is not entitled to relief on the basis of his claim regarding the trial court's failure to address his post-judgment motion.

### G. Trial Counsel (claims seven, eight, nine, and twelve)

Several of petitioner's claims allege that his trial attorney rendered ineffective assistance. The seventh habeas claim alleges that trial counsel was ineffective because the attorney submitted a fraudulent contract to the court. (Dkt. 1 at 15). In his eighth and twelfth claims, petitioner alleges that defense counsel failed to prepare for trial or investigate mitigating evidence even though the trial court authorized payment for a private investigator. (*Id.* at 17 & 25). Finally, in his ninth claim, petitioner alleges that his trial attorney should have used an independent medical expert to challenge the State's medical expert or to educate himself on scientific issues so that he could effectively cross examine the State's expert. (*Id.* at 19). The state trial court reviewed petitioner's claims during state collateral proceedings and found no merit in the claims.

### 1. Clearly Established Federal Law

34

To prevail on his claims, petitioner must show that counsel's "performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The "deficient performance" prong of the *Strickland* test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be

substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

### 2.  Fraudulent Contract

Petitioner contends that his trial attorney was ineffective because the attorney submitted a fraudulent contract to the court.   The "contract" in dispute is a notice of trial, entitled "Final Pre-trial Conference Summary and Firm Trial Date Contract."  (Dkt. 1 at 15). Although petitioner insinuates that his attorney forged his signature on the form, the attorney denied any wrongdoing.   Furthermore, the attorney's comment to the Attorney Grievance Commission that he did not know or care who signed petitioner's name on the notice of trial is not indicative of deficient representation.   It merely reflects the fact that the signature on the notice of trial had no bearing on the outcome of petitioner's case.

Petitioner has failed to show that his attorney forged his signature on the contested notice.   He also has failed to show that counsel's alleged deficient performance prejudiced the defense.   The Court therefore rejects petitioner's contention that his attorney submitted a

fraudulent contract to the court, or that the contract had any bearing on the outcome of his case.

### 3. Failure to Use a Private Investigator

Petitioner alleges next that his trial attorney spent less than an hour with him before trial and that the attorney failed to prepare adequately for trial. He claims that trial counsel should have used a private investigator paid by Wayne County to find mitigating evidence.

### a. The Utility Shutoff

Petitioner asserts that his attorney could have used the private investigator to determine whether the water and gas were operative at the time of the alleged sexual assault. Petitioner asserts that this evidence could have been used to show that the complainant perjured herself when she testified that she took a hot bath after the alleged attack.

Whether there was running water available in the trailer on the date of the alleged assault was an issue that arose at trial. The complainant testified that, at one point, there was no water in the trailer, but that petitioner turned it back on. She was sure that there

was water on the date of the assault. (Dkt. 12-8 at 52-55). Petitioner, on the other hand, claimed that the gas and water were shut off about mid-February or in March 2007. He denied turning the water back on, and he stated that it would have been impossible for someone to take a hot bath in the trailer on March 1, 2007 (the approximate date of the assault). (*Id.* at 90-91, 94, & 102-03).

Even assuming that defense counsel was remiss in failing to investigate whether the gas and water were operative on the date of the alleged assault, petitioner merely speculates that the utilities were inoperative. And even if defense counsel had investigated and discovered that the utilities were inoperative on the date in question, the information would not have exonerated petitioner. Consequently, petitioner has failed to show that counsel's allegedly deficient performance prejudiced him.

### b. Motive

Petitioner also claims that defense counsel was ineffective for failing to establish a motive for the complainant's allegations. According to petitioner, the complainant's mother was expecting a

disability check for $20,000, and the mother's unwillingness to share the money with petitioner could have motivated the complainant to falsely accuse him. Petitioner claimed at his sentencing that the complainant's mother "put her daughter up to this" in order to "put [him] away so that she [w]ould be able to spend her money." (Dkt. 12-11 at 13).

Both the complainant and petitioner, however, testified at trial that there were no problems between them. (Dkt. 12-8 at 90-91; Dkt. 12-9 at 108). And if the complainant's mother had wanted to have petitioner imprisoned, one would have expected her to testify against him at trial. Instead, she failed to appear for trial, despite being served with a subpoena. Petitioner's mere speculation about the complainant's motive for her allegations does not rise to the substantial nature required to trigger habeas relief under an ineffective assistance of counsel claim. *See Richter*, 562 U.S. at 111-12.

### 4. Failure to Produce an Expert Witness

Petitioner alleges that his trial attorney should have produced an independent medical expert to challenge the State's expert witness or to educate himself so that he could conduct an effective cross-examination.

The State's expert witness was Dr. Dev who testified that there were no findings during the physical examination of the complainant and that she saw no injury, redness, scars, rashes, or lesions. (Dkt. 12-8 at 66, 68, & 76). The trial court reasonably concluded in its ruling on petitioner's post-conviction motion that petitioner's "best medical witness was the prosecution's expert and [that] the decision not to call another expert was reasonable trial strategy given the favorable testimony of the prosecution's expert." *People v. Singleton*, No. 07-08882-01-FC, at unnumbered page 5 (Wayne County Cir. Ct. Sept. 22, 2010).

Accordingly, the Court finds that counsel's failure to produce a defense expert did not amount to deficient performance.

### H. The Absence of a Res Gestae Witness (claim ten)

Petitioner alleges that his trial attorney and the prosecutor committed prejudicial error by not producing the complainant's mother

40

as a witness.  Petitioner claims that the complainant's mother would have helped his case by casting doubt on the complainant's credibility. (Dkt. 1 at 21).

State law no longer requires a prosecutor to produce *res gestae* witnesses; instead, a prosecutor is required to provide notice of all known *res gestae* witnesses and to provide reasonable investigative assistance in locating and serving process on a witness.  M.C.L. § 767.40a(1) and (5).  Petitioner nevertheless claims that the detective in charge of his case did not exercise due diligence in trying to locate the complainant's mother and did not attempt to serve a subpoena on the complainant's mother in a timely manner.

The alleged failure to exercise due diligence in producing a *res gestae* is a matter of state law, which is outside the scope of habeas corpus review.  *Collier v. Lafler*, 419 F. App'x 555, 559-60 (6th Cir. 2011) ("Michigan's requirement that prosecutors produce *res gestae* witnesses is a matter of state law, and its enforcement is outside the scope of our review.")  Furthermore, under state law, due diligence entails doing "everything reasonable, not everything possible, to obtain

the presence of *res gestae* witnesses." *People v. George*, 130 Mich. App. 174, 178 (1983).

> [T]he prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial. The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, and not whether more stringent efforts would have produced it.

*People v. Bean*, 457 Mich. 677, 684 (1998).

The record in this case indicates that the complainant's grandfather personally served the complainant's mother with a subpoena for trial. Additionally, the detective in charge of the case went to the mother's home, left a subpoena in the door, checked with neighbors, left voice messages on four different phones, and checked with the hospital where the witness was reported to have gone. (Dkt. 12-9 at 5-9, 71-72). These efforts to locate the witness were reasonable, and because petitioner also had no idea where the witness could be found, defense counsel was not ineffective for failing to produce the witness. Moreover, petitioner merely speculates that the complainant's mother would have contradicted the complainant's testimony. The Court therefore concludes that neither the prosecutor, nor defense

42

counsel, committed prejudicial error by failing to produce the complainant's mother.

### I. Actual Innocence (claim eleven)

Petitioner claims that his convictions should be reversed because he is actually innocent. This claim is based on the contention that the case was a mere credibility contest and that there was no physical evidence of sexual penetration to support the charge of first-degree criminal sexual conduct. (Dkt. 1 at 23).

To the extent petitioner is reiterating his sufficiency-of-the-evidence claim, the claim fails for the reasons given above. *See supra*, section III. B. Furthermore, a freestanding claim of actual innocence is not itself a constitutional claim for which habeas corpus relief may be granted. *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993). "[I]n a capital case, a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id*. at 417. But this is not a capital case, and "whatever burden a hypothetical freestanding innocence claim would

43

require, this petitioner has not satisfied it." *House v. Bell*, 547 U.S. 518, 555 (2006). Consequently, petitioner has no right to relief on the basis of his claim of actual innocence.

### J. Trial and Appellate Counsel (claim thirteen)

In this thirteenth and final claim, petitioner alleges that his trial and appellate attorneys were ineffective for failing to argue in favor of a more lenient sentence and for failing to challenge the trial court's calculation of the sentencing guidelines. (Dkt. 1 at 27).

Michigan's indeterminate sentencing system applies to a criminal defendant's minimum sentence. *People v. Claypool*, 470 Mich. 715, 730 n.14 (2004); *People v. Herron*, 303 Mich. App. 392, 403–04 (2013). In this case, there was a mandatory minimum sentence of twenty-five years in prison for petitioner's most severe crime, M.C.L. § 750.520b(2)(b), and, in the words of the state prosecutor, the mandatory minimum sentence "trump[ed] the guidelines." (Dkt. 12-11 at 3). Therefore, counsel's failure to object to the alleged error in the guidelines score did not constitute deficient performance. Nor did the allegedly deficient performance prejudice petitioner.

44

IV. Conclusion

The state courts' rejection of petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts. Adjudication of the issues certainly was not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (quoting *Richter*, 562 U.S. at 103).

Accordingly, the Court DENIES the petition for writ of habeas corpus. (Dkt. 1).

V.   Regarding a Certificate of Appealability and the Appellate Filing Fee

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the

45

constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For all the reasons given above, reasonable jurists would not find the Court's assessment of petitioner's claims debatable or wrong. The Court therefore declines to issue a certificate of appealability. Petitioner nevertheless may proceed *in forma pauperis* on appeal if he chooses to appeal this Court's decision because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

Dated: March 23, 2015          s/Judith E. Levy
Ann Arbor, Michigan            JUDITH E. LEVY
                               United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 23, 2015.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager